## Chicago, B. & Q. R. R. Co. v. Jacob Reith, by his Next Friend.

1. ORDINARY CARE—*A Question for the Jury.*—The question as to the use of ordinary care is one of fact, to be determined by the jury.

2. RAILROAD CROSSINGS—*Liability at.*—A railroad company can not avoid its responsibility by putting up a sign at a street crossing that it will not be responsible for injuries.

3. SAME—*What are*—*Determination of.*—A public crossing may be inferred from the use of it made by the public and the railroad company. And if the same is treated as a regular crossing in the manner of its use a jury will be justified in finding it to be such.

. 4. PERSONAL EXAMINATION—*Of the Plaintiff, Discretionary.*—When the plaintiff in an action for personal injuries does not claim to be suffering from any secret malady, it is not an abuse of discretion in the court to refuse to require him to submit to a personal examination.

**Trespass on the Case,** for personal injuries. Appeal from the City Court of Aurora; the Hon. R. P. GOODWIN, Judge, presiding. Heard in this court at the December term, 1895. Affirmed. Opinion filed June 1, 1896.

A. J. HOPKINS, N. J. ALDRICH, F. H. THATCHER and F. A. DOLPH, attorneys for appellant; O. F. PRICE, of counsel.

McCRACKEN & CROSS, attorneys for appellee.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

This was a suit brought by appellee, a minor under twenty-one years of age, to recover for injuries received at Clifton Park avenue crossing at Twenty-second street, Chicago, by being run over by appellant's locomotive attached to a passenger train. The case was tried by a jury, verdict for appellee for $650, and the court, overruling a motion for a new trial, rendered judgment on the verdict. The appellee received considerable injuries—his skull was cracked, and he was otherwise severely bruised.

It was from July to September before he recovered from his injuries. A great many points are made by counsel for appellant, claiming a right of reversal. The negligence charged in the declaration, in the various counts, were, that at the time appellee was injured, appellant was running its train at a greater rate of speed than thirty miles an hour, allowed by the ordinance of the city, and that appellant failed to ring the bell or sound the whistle, as required by the statute, before reaching the crossing. Also, that the appellant operated its locomotive engine and cars at a high and dangerous rate of speed while approaching the crossing, and also was negligent in failing to have gates or flagmen at Clifton Park avenue crossing.

There is but little contention but that the appellant was running its train at a rate of speed of about thirty-five miles an hour, a dangerous rate in a populous city, and there is no contention that it rang a bell or sounded a whistle at the crossing. But it is contended very strenuously that appellee was guilty of contributory negligence in not keeping a proper lookout for the coming train at the time of approaching the crossing where the injury occurred. The evidence, however, tends to show that he looked out of the door of the covered milk wagon in which he was riding, when nearing the crossing, and we think the jury was justified in believing that appellee was in the exercise of ordinary care in that respect. It is further insisted that the crossing was not a public one, and that the appellant had never granted the right of way across its track · at that point, and that it had put up a sign that " any persons crossing on it would do so at their own peril." But the evidence tends strongly to show that Clifton Park avenue is a street, and that it was continually used by travelers, both in vehicles and on foot; that it was treated by the company the same as other streets, and some of its employes exercised more care at that place because of its dangerous nature; that both the public and the railroad company treated this as a regular crossing in the manner of its use; that it had every appearance of a street; that the crossing was planked between the rails, and the public traveled over it continually. We are of the opinion the jury was justified in finding that this was a public crossing, and that the appellant could not avoid responsibility by sticking up a sign board that it would not be responsible for injuries. The appellant insists that the court erred in not requiring the appellee to submit to a personal examination by a physician to see if they could not discover something to show that he was not as badly injured as he pretended to be. We think, however, that the court was justified under the law, in refusing the request. It was a discretionary matter with the court, even if it had the power to require this to be done. Parker v. Enslow, 102 Ill. 272; Joliet Street Railway Co. v. Call, 143 Ill. 177; P. D. & E. Ry.

Co. v. Rice, 144 Ill. 227. We are of the opinion, under the evidence as it developed, that there were no real grounds for asking such an examination; and appellant's affidavit that it was necessary to a proper defense, did not justify the court in requiring it. The appellee was not pretending to suffer under any secret malady. One arm was stiff, but it was improving. The bruises and scratches had all healed. The physician who testified for the appellant admitted the appellee's injuries. The complaint that the court refused to allow appellant to show that appellee refused to submit to an examination by physicians, we do not think good grounds for reversal, even if the evidence were admissible.

The damages are small, and seem to be fully sustained by the evidence. Criticism is made on a number of appellee's instructions, and failure to give some of appellant's instructions. Nos. 3 and 4 of appellee's instructions are complained of; it is said that instruction No. 3 groups together a lot of facts, claimed by appellee to have been proven in the case, favorable to his side and injurious to appellant. This instruction has reference to the crossing and its uses, etc., by the public, and we do not think it is open to the criticism made. No. 4 has reference to the sign board, stating that the plaintiff was not, as a matter of law, bound to observe the sign board, and whether he saw it or not was a question for the jury. We think the instruction taken as a whole was not erroneous; if appellee did not see the sign board, and if the crossing was used by the public as a highway, with the knowledge and acquiescence of the appellant, then the latter was bound to treat it as a highway. As regards the instructions refused on the part of the appellant, we are of the opinion there was no error, even if the instructions were good, as the jury was fully and completely instructed on all the necessary points and law of the case. Seeing no error in the record, the judgment of the court below is affirmed.

OPINION PER CURIAM ON REHEARING.

The petition for rehearing challenges two statements made by this court in its opinion filed December 10, 1895, to wit:

" There is no contention that appellant rang a bell or sounded a whistle at the crossing " and " that there was but little contention but that appellant was running its train at a rate of speed of about thirty-five miles an hour."

These statements were made by this court upon reading the appellant's brief in chief and its reply, neither of which contested those points, although appellee's attorneys contended for the two propositions in their brief.

The petition now argues these questions for the first time, and also re-argues the question of contributory negligence of the appellee. We have re-examined the evidence on all these questions, and have again arrived at the conclusion that the evidence supports the verdict.

It is not a bar to recovery in all cases that a person approaching a railroad crossing fails to stop and look out for an approaching train.

It is a question of fact for a jury under all the evidence, and circumstances in evidence, whether a person is guilty of negligence in not doing so.

In this case, the appellee did look out, at a distance from the crossing variously estimated by appellee and other witnesses from fifteen to forty to fifty feet and less.

The appellee was so shocked by the collision that he can remember nothing after he looked out of the milk wagon. The witness Mary Higginson says appellee, " at the time he was looking out of the door, the horse's head, with reference to the first track, was about ten feet away," and " may be not quite ten." The witness Rena Clepp says " the wagon stopped there and the boy stretched his head out of the wagon and looked down the track. He looked east," and that the wagon was " about three feet from the track."

On the appellee's cross-examination he stated he was about the middle of the Clifton avenue street or block, may be a little less, from the railroad track; but he also says that he was within fifteen feet. The jury had the appellee's evidence and that of the two ladies before it, and may have thought on account of the boy's agitation at what took place so soon afterward, he could not tell exactly where he was. Evi-

dently he looked and tried to discover if any car was coming, and failed to see it. Whether he should have stopped the team, or Bell should, and gotten out of the wagon and walked close and looked for the train, was all a question of fact, with the other evidence, to be considered by the jury.

As to the speed of the train and the ringing of the bell, it was also a question for the jury.

These alleged facts were contested, and while the evidence was not conclusive against appellant, it was a question for the jury, and we do not think it was against the verdict, so that it should be set aside.

There was another allegation that the train was running at an unreasonably rapid rate of speed and that the appellant failed to maintain a gate or flagman at Clifton Park avenue crossing. No doubt it was running at a rate of speed of twenty-three to thirty miles per hour.

Without entering into any extended discussion, we feel compelled to adhere to our former ruling, and deny the rehearing.